**UNITED STATES of America, Plaintiff–Appellee,**

v.

**ALL ASSETS AND EQUIPMENT OF WEST SIDE BUILDING CORP., et al., Defendants,**

**Appeal of Clara PENNY and West Side Building Corp., Claimants–Appellants.**

**No. 94–1377.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 9, 1994.

Decided June 29, 1995.

Terry M. Kinney, Asst. U.S. Atty., Crim. Div., Steven C. Mason (argued), Office of U.S. Atty., Civ. Div., Appellate Section, Ra-

mune R. Kelecius, Office of U.S. Atty., Civ. Div., Chicago, IL, for U.S.

Michael D. Monico, Barry A. Spevack (argued), Monico, Pavich & Spevack, Chicago, IL, for Clara Penny and West Side Bldg. Corp.

Before RIPPLE and MANION, Circuit Judges, and SKINNER, District Judge.*

RIPPLE, Circuit Judge.

In this forfeiture action, the district court granted summary judgment to the United States and entered final judgment against the claimants Clara Penny and the West Side Building Corporation (collectively, "claimants" or "Mrs. Penny") on their claims to vehicles, real estate and personal properties. The court ordered that the defendant properties be forfeited to the United States. Mrs. Penny appeals the district court's summary judgment determination and its denial of claimants' motion for reconsideration. For the reasons presented below we affirm in part and remand in part.

## I

### BACKGROUND

#### A. Verified Complaint and Affidavit

On April 4, 1989, the United States government filed a verified complaint and supporting affidavit to initiate forfeiture proceedings against the defendant real and personal properties located in Illinois. The complaint alleged that Jonathan and Clara Penny, husband and wife, were involved in narcotics distribution activities for the past decade. It also alleged that drug trafficking was a "family business" in which Clara Penny managed the business aspects, setting the prices and investing the proceeds, and in which their son Michael was involved. In fact, according to the complaint, both father and son had been incarcerated on narcotics charges. The defendant properties, worth perhaps $3.5 million,[1] were alleged to be the

---

* The Honorable Walter Jay Skinner of the United States District Court for the District of Massachusetts is sitting by designation.

1. The worth of the Pennys' assets, which are itemized or described in detail in the complaint, was alleged thus:

The Pennys have used the proceeds from narcotics trafficking to acquire substantial assets including real estate conservatively valued at $2,000,000.00, bank and stock accounts worth approximately $470,000, eight automobiles as well as a motorhome worth approximately

fruits of the large-scale narcotics trafficking operation run by the Pennys. The complaint recited that Clara Penny was employed as a mail handler, and yet she drove a Mercedes Benz. Because the Pennys' modest legitimate reported income could not explain the acquisition of those assets or the Pennys' lavish lifestyle, the complaint alleged that there was probable cause to believe that the assets constituted proceeds of illicit drug transactions and records of those activities that were forfeitable to the government under 21 U.S.C. §§ 881(a)(5) and (6).[2]

Filed with the complaint was the affidavit of Chicago Police Officer Lawrence Evans, a member of the Drug Enforcement Administration/Chicago Police Department Joint Task Force on Narcotics. Following his investigation of the Pennys' narcotics operation, this forfeiture action and, later, the indictment of Jonathan Penny on federal drug trafficking charges were initiated. In his affidavit, Officer Evans reported, in detail, information concerning the Pennys' drug trafficking that he had learned from a "reliable informant" who had known the Pennys for years.[3] According to that informant, Jonathan Penny told him that, in the drug business, you put everything in your wife's name. Officer Evans' check of the titles to the Pennys' real estate and automobiles re-

vealed that many of their assets were in the name of Clara Penny or West Side Building Corporation ("West Side"). From a second informant, an associate of Jonathan's for almost a decade, Officer Evans learned that Jonathan had been distributing multi-kilo quantities of cocaine since 1980. A third source described to Officer Evans the lavish lifestyle of the Pennys, the elegant furnishings of their home, and the expensive restoration of their other realty. In addition, independent information that corroborated the allegation of a history of drug trafficking included the police records of both Jonathan and Michael Penny.

Officer Evans reviewed the Pennys' bank and stock records, and learned that large deposits of cashiers checks were made into their account in 1985 and 1986, and that checks for $75,000 were written to contractors working on the Pennys' property. After reviewing the Pennys' tax returns, Officer Evans pointed out that Clara's paycheck as a mail handler was the couple's only legitimate income, and that their reported adjusted gross income was far less than their deposits in bank and stock accounts.

### B. Course of Proceedings

On April 4, 1989, the district court granted

---

$100,000 and a recreational van. Penny has boasted that he maintains $500,000 to $750,-000 in cash hidden away.
R. 1 at ¶ 7. The estimated total worth of the property is $3.5 million. R.1 Aff. at ¶ 28.

**2.** We note that the government brought its complaint under §§ 881(a)(5) and (6), which list as forfeitable property "all books, records, and research" and "all moneys, negotiable instruments, securities, or other things of value," including their proceeds, used or intended to be used in narcotics transactions. R. 1. Yet the complaint clearly itemized vehicles and real estate among the property. The district court's seizure order found probable cause under (a)(6) and (7), thereby including real property "used, or intended to be used, ... to commit, or to facilitate the commission of" illegal drug activity. R. 4. Then the court's summary judgment ruling added § 881(a)(4), which treats as forfeitable property all conveyances that transport or intend to transport drug materials. R. 194. This lack of care on the part of the government is hard to understand. However, Mrs. Penny did not object or claim to have been misled concerning the clearly

identified property sought for forfeiture. Nor did she claim not to have received notice concerning seized property. Thus she was not prejudiced by a citation to the wrong portion of the statute. Cf. Hollenback v. United States, 987 F.2d 1272, 1280 (7th Cir.1993) (concluding that counsel's reference to erroneous subsection did not result in unreliable result); United States v. Lim, 984 F.2d 331, 337 (9th Cir.), cert. denied, — U.S. —, 113 S.Ct. 2944, 124 L.Ed.2d 692 (1993) (allowing amendment of indictment). The mistake is therefore harmless, and we shall treat the changes made by the district court as correction of a scrivener's error, see Fed.R.Civ.P. 60(a).

**3.** This informant told Officer Evans that Jonathan Penny had been distributing cocaine and heroin for fifteen or twenty years, and had boasted that he had sold over 20 million dollars worth of narcotics. According to the informant, Clara Penny was also involved in the drug distribution because she had a "head for figures," and their son Michael Penny had been caught transporting heroin and a ledger book documenting drug sales.

the government's *ex parte* motion[4] for forfeiture of the defendant properties. The court determined there was probable cause to believe the property described in the complaint was subject to forfeiture under §§ 881(a)(6) and (7),[5] and executed the warrant of seizure. Mrs. Penny filed a verified claim to the property on behalf of herself and West Side, of which she is the sole director.[6] She then sought dismissal of the complaint. Following full briefing on the issues, the district court denied claimants' motion to dismiss. The court found that the allegations were sufficiently detailed to comply with the pleading requirements for forfeiture laid out in Supplemental Rule (E)(2)(a).[7] It also declined to disturb the court's initial finding of probable cause.

On July 30, 1991, the government filed an amended complaint and the supporting affidavit of Officer Evans. For the most part, it realleged the allegations of the original complaint. However, it provided additional detailed allegations that the properties were used to facilitate drug trafficking. According to this complaint, Chicago police detectives reported to Officer Evans that Jonathan Penny was a source of narcotics to two major west side dealers. One of those dealers, Andre Jackson, informed Officer Evans that Jonathan Penny had taught him how to run Jackson's father's drug business, and had described the location of secret drug laboratories hidden in two of the Pennys' buildings—labs that United States marshals had found in 1990. Jackson also stated that drug profits were used to restore the buildings.

The district court's opinion of November 23, 1993[8] denied Mrs. Penny's request for a continuance because the claimants had not submitted the required affidavit and because they had been given continuances for the review of documents previously. The court then granted the government's motion for summary judgment on several grounds. First, the court noted that Mrs. Penny had failed to file a 12(n) statement, and was therefore deemed to have admitted the government's 12(m) facts—an admission that would dictate summary judgment. It then awarded the government summary judgment on the merits. It noted that the court had found probable cause twice before, and that the government had thus met its burden. In evaluating whether Mrs. Penny's evidence met the burden that had shifted to her, the court considered her defenses and deter-

---

4. Some of the property involved was realty. However, this order antedated by several years the Supreme Court's decision in *United States v. James Daniel Good Real Property*, — U.S. —, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993).

5. The subsections of the forfeiture statute pertinent to this case provide:

 § 881. (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport ... [controlled substances, etc.]....
 (5) All books, records, and research ... which are used, or intended for use, in violation of this subchapter.
 (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange....
 (7) All real property ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter....

6. Jonathan Penny is not a party to this action. He failed to file a claim on the property; thus the court entered a default decree of forfeiture as to his interests in the seized properties on August 15, 1990. He was convicted on federal drug trafficking charges on September 10, 1993; the appeal of that conviction is under advisement in this court. The district court declared that, because Clara Penny represented both herself in her individual capacity and West Side as its president, the court's opinion would bind both Mrs. Penny and West Side.

7. The Supplemental Rules for Certain Admiralty and Maritime Claims apply to forfeiture actions under 21 U.S.C. § 881(b)(1). *See United States v. U.S. Currency, The Amount of $103,387.27*, 863 F.2d 555, 558 n. 4 (7th Cir.1988). Supplemental Rule E(2)(a), applicable to forfeiture proceedings, requires that the complaint "shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."

8. *United States v. All Assets & Equipment of West Side Bldg. Corp.*, 843 F.Supp. 377 (N.D.Ill.1993).

mined that each one failed.[9] It therefore granted summary judgment to the government pursuant to 21 U.S.C. §§ 881(a)(4), (6) and (7), and ordered all of the defendant property forfeited.

The court later denied Mrs. Penny's motion to reconsider. It noted that, when responding to the government's motion for summary judgment, Mrs. Penny had not challenged the government's contention that the burden of proof had shifted to her. The court now rejected her submission that there had not been a finding of probable cause, and therefore that the burden of proof had been shifted improperly to Mrs. Penny. The court offered two reasons for refusing to accept that position. First, it clearly could have been raised earlier, in response to the motion for summary judgment. Second, Mrs. Penny could not have prevailed on a probable cause challenge because there was sufficient evidence to support a probable cause determination under §§ 881(a)(4), (6) and (7). Finally, the court refused to entertain Mrs. Penny's argument that, under *United States v. James Daniel Good Real Property*, —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), she was entitled to damages because she did not receive a pre-seizure hearing.

## II

## DISCUSSION

Mrs. Penny raises three issues on appeal. She first submits that the district court erred in its probable cause rulings. She also contends that the court abused its discretion by refusing to grant claimants a continuance under Rule 56(f). Finally she suggests that the court should have assessed damages against the government under *James Daniel Good.*

 In forfeiture cases, as in all others, we review de novo the district court's entry of summary judgment. *United States v. One Parcel of Land Located at 7326 Highway 45 North*, 965 F.2d 311, 314 (7th Cir.1992). In

our consideration of the record, " 'the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). Summary judgment is appropriate when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *United States v. Two Plastic Drums, More or Less of an Article of Food*, 984 F.2d 814, 816 (7th Cir.1993). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

 Because the issues of probable cause and damages were raised for the first time in claimants' motion to reconsider, however, Mrs. Penny also requests our review of the district court's denial of that motion. We review a judgment on a motion to reconsider for abuse of discretion. *Hope v. United States*, 43 F.3d 1140, 1144 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2558, 132 L.Ed.2d 812 (1995); *Mares v. Busby*, 34 F.3d 533, 535 (7th Cir.1994).

### A. *Probable Cause*

1.

Mrs. Penny first challenges the district court's probable cause determination. She submits that the government must have probable cause, based on the facts alleged at the time the government brings the forfeiture action, to believe that the defendant property was involved in the activity that the

---

9. Mrs. Penny raised defenses of innocent ownership, legitimate acquisition of the property, and legitimate income. She does not challenge on appeal the district court's conclusion that those defenses were unsupported. Nor does she raise

issue with the court's denial of her request for immunity from prosecution or its rejection of her argument that the forfeiture was out of proportion to the crimes committed.

forfeiture statute forbids. Thus, claims Mrs. Penny, the government was required to show that the Pennys had acquired each piece of forfeited property with the proceeds of narcotics transactions. In her view, the government did not meet that burden; it did not establish a direct nexus between the Pennys' alleged drug dealings and the purchase of certain property. Instead, the government sought forfeiture based on the unverified hearsay allegations of informants and the estimated valuation of the property—evidence that is inherently unreliable in any proof that the properties were purchased with drug proceeds. Mrs. Penny also contends that her husband's prior convictions for drug possession cannot sustain the notion that all the property that came into his and his wife's possession was connected to that drug activity.

Mrs. Penny further submits that the district court, when making its summary judgment ruling, improperly shifted the burden to the claimants without first making a determination that the government actually had established probable cause. According to Mrs. Penny, the district court, when ruling on claimants' motion to dismiss, simply had determined that the complaint alleged probable cause, but not that probable cause existed. Mrs. Penny contends that, when the district court finally did analyze the evidence with respect to probable cause in its order denying claimants' motion to reconsider, it erroneously based its probable cause finding on the cumulative evidence and allegations found in the amended complaint and the government's 12(m) statement rather than on the allegations of the original complaint. As Mrs. Penny submits, "[t]he trial court erred when it jumped right to the conclusion that the Pennys had to rebut the probable cause finding without first determining whether a probable cause finding was warranted." Claimants' Br. at 31.

**2.**

The forfeiture provision of the Comprehensive Drug Abuse Prevention & Control Act of 1970 ("Drug Act"), 21 U.S.C. § 881, establishes that property used to commit or to facilitate a violation of the Drug Act, including proceeds traceable to narcotics trafficking, is subject to forfeiture. The forfeitable property includes vehicles (§ 881(a)(4)), books and records (§ 881(a)(5)), personal property (§ 881(a)(6)) and real property (§ 881(a)(7)). The legislation, "designed to deal in a comprehensive fashion with the growing menace of drug abuse in the United States," allows the government to remove the profits (and thus the incentive) of drug trafficking. H.R.Rep. No. 1444, 91st Cong., 1st Sess. 1 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566, 4567;[10] *see also Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 686–87, 94 S.Ct. 2080, 2093–94, 40 L.Ed.2d 452 (1974) (noting that "[f]orfeiture of conveyances that have been used—and may be used again—in violation of the narcotics laws fosters the purposes served by the underlying criminal statutes, both by preventing further illicit use of the conveyance and by imposing an economic penalty, thereby rendering illegal behavior unprofitable"); *United States v. $40,877.59 in U.S. Currency,* 32 F.3d 1151, 1157 (7th Cir.1994) (commenting that "forfeiture act is a formidable weapon in the government's arsenal, and when properly enforced, serves the public good," and that property illegally obtained or used to promote illegal activities should be forfeited to the United States government so that "[c]riminals [do] not profit from their crimes").

The obvious purpose of the [forfeiture] statute read as a whole is to deprive drug traffickers of the principal tools of their trade, which include the drugs themselves, the equipment and raw materials for their manufacture, the firearms used to enforce

---

**10.** The statute gives the Attorney General such authority as "administrative inspections, forfeitures, and execution of search warrants, including authority to enter premises without giving notice of authority and purpose if a judge or U.S. magistrate has authorized such entry in the warrant after determining that there is probable cause to believe that—

(1) property sought may and, if notice is given, will be easily and quickly destroyed or disposed of, or

(2) the giving of such notice will immediately endanger the life or safety of the executing officer or another person."

H.R.Rep. No. 1444, 1970 U.S.C.C.A.N. at 4570–71.

contracts in an illegal business, the premises used for making and selling drugs—and the vehicles, boats, and aircraft that the traffickers use in their business.

*United States v. 1990 Toyota 4Runner,* 9 F.3d 651, 653 (7th Cir.1993).

■ The procedures by which the government attaches property through forfeiture proceedings are well established. The statute offers three ways of instituting such proceedings: (1) following the procedure presented in the Supplemental Rules under § 881(b); (2) obtaining a court-ordered seizure warrant under Rule 41(c) of the Federal Rules of Criminal Procedure; and (3) seizing the property without judicial process "when the Attorney General has probable cause to believe the property is subject to civil forfeiture." 21 U.S.C. § 881(b)(4). *See United States v. Daccarett,* 6 F.3d 37, 46 (2d Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1294, 127 L.Ed.2d 648 (1994). Of course, probable cause is required to initiate a forfeiture action, no matter which method is followed. The probable cause threshold in a drug forfeiture case is the same as that

applicable elsewhere, *United States v. Edwards,* 885 F.2d 377, 390 (7th Cir.1989), and is one in which the burden of proof has been clearly set forth.[11] The government, as the party seeking the forfeiture, has the preliminary responsibility; "the government's initial burden is to establish probable cause to believe that the property is subject to forfeiture." *United States v. $94,000 in U.S. Currency,* 2 F.3d 778, 782 (7th Cir.1993) (citing *United States v. On Leong Chinese Merchants Ass'n Bldg.,* 918 F.2d 1289, 1292 (7th Cir.1990), *cert. denied,* 502 U.S. 809, 112 S.Ct. 52, 116 L.Ed.2d 29 (1991)). To show probable cause, the government must demonstrate to the court that it has "reasonable ground for the belief of guilt supported by less than *prima facie* proof but more than mere suspicion." *Id.* In this showing, the government may rely not only on direct evidence but also on circumstantial evidence, *id.* at 783 n. 2, and on hearsay evidence.[12] Probable cause for the forfeiture exists if the government demonstrates a nexus between the seized property and illegal narcotics activity.[13] *United States v. Certain Real Prop-*

---

**11.** 19 U.S.C. § 1615 (1988), incorporated into the Drug Act pursuant to § 881(d), presents the allocation of the burden of proof in forfeiture proceedings. In pertinent part it provides:

> In all suits or actions ... brought for the forfeiture of any vessel, vehicle, aircraft, merchandise, or baggage seized under the provisions of any law relating to the collection of duties on imports or tonnage, where the property is claimed by any person, the burden of proof shall lie upon such claimant; and in all suits or actions brought for the recovery of the value of [any such property] because of violation of any such law, the burden of proof shall be upon the defendant: *Provided,* That probable cause shall be first shown for the institution of such suit or action, to be judged by the court.

**12.** The vast majority of circuits have held explicitly that the government is permitted to present hearsay evidence when proving probable cause in a forfeiture action. *See, e.g., United States v. One 1973 Rolls Royce, V.I.N. SRH–16266,* 43 F.3d 794, 805 (3d Cir.1994); *Daccarett,* 6 F.3d at 56; *United States v. One 1982 Chevrolet Corvette,* 976 F.2d 392, 392 (8th Cir.1992); *United States v. One Parcel of Real Estate at 1012 Germantown Road,* 963 F.2d 1496, 1501 (11th Cir.1992); *United States v. One 1986 Chevrolet Van,* 927 F.2d 39, 42 (1st Cir.1991); *United States v. One 1987 Mercedes 560 SEL,* 919 F.2d 327, 331 (5th Cir. 1990); *United States v. One Parcel of Real Estate Located at 7715 Betsy Bruce Lane,* 906 F.2d 110,

113 (4th Cir.1990); *United States v. Parcel of Real Property Known as 6109 Grubb Rd.,* 886 F.2d 618, 622 (3d Cir.1989); *United States v. $5,644,540 in U.S. Currency,* 799 F.2d 1357, 1362 (9th Cir.1986). A finding of probable cause based on hearsay from confidential informants and on circumstantial evidence may be the only proof available in cases involving bank accounts, money, or other fungible assets, in order to reveal unexplained wealth in conjunction with evidence of drug trafficking. *See Daccarett,* 6 F.3d at 56 (citing cases).

**13.** There is some disparity among the circuits concerning the level of proof above "mere suspicion" to which probable cause must rise. The cases say that the government must demonstrate that there is either a "nexus" or a "substantial connection" between the seized property and the illegal drug activity. The Second Circuit has considered the difference in terminology in depth and has decided that the government need prove only a "nexus" between the seized property and the illegal drug activity. *Daccarett,* 6 F.3d at 55–56. This circuit agrees that a "nexus," and not a "substantial connection," is required between the property and the drug-related offense. *6250 Ledge Rd.,* 943 F.2d at 725. Many courts require a nexus, without significant discussion; decisions in some other circuits leave the issue unresolved. *Compare, e.g.,* Sixth Circuit cases (*United States v. Real Property Known and Numbered as 429 South Main Street,* 52 F.3d 1416, 1418, 1423 (6th

erty, *Commonly Known as 6250 Ledge Rd.*, 943 F.2d 721, 725 (7th Cir.1991) (requiring demonstration of nexus that is more than incidental between property and drug-related offense); *United States v. One Parcel of Real Estate Commonly Known as 916 Douglas Ave.*, 903 F.2d 490, 494 (7th Cir.1990), *cert. denied*, 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991) (same).

Once the government meets its burden, "the ultimate burden shifts to the claimant to prove by a preponderance of the evidence that the property is not subject to forfeiture," *$94,000 in U.S. Currency*, 2 F.3d at 782–83, by demonstrating that the property was not used in connection with drug activities. *See 6250 Ledge Rd.*, 943 F.2d at 725; *On Leong*, 918 F.2d at 1293; *United States v. $84,000 U.S. Currency*, 717 F.2d 1090, 1101 (7th Cir.1983), *cert. denied*, 469 U.S. 836, 105 S.Ct. 131, 83 L.Ed.2d 71 (1984). If the claimant fails to rebut the government's proof, that showing of probable cause alone will support a judgment of forfeiture. *On Leong*, 918 F.2d at 1292; *see also United States v. Certain Real Property 566 Hendrickson Blvd.*, 986 F.2d 990, 995 (6th Cir. 1993) (collecting cases); *United States v. One 1982 Chevrolet Corvette*, 976 F.2d 392, 392–93 (8th Cir.1992) (holding that agent's affidavit for determining probable cause was not rebutted by claimant's blanket denial of drug trafficking activity).

### 3.

Applying these standards to the case before us, then, we note that the government, complying with the Supplemental Rules, filed a verified complaint in the district where the seizure was to occur, and the court authorized a warrant "of seizure and monition issued pursuant to Rule C of the Admiralty Rules." R.4. The court later held, in its order denying claimants' motion to dismiss, that the complaint complied with the particularity requirements for pleadings presented in Supplemental Rule E(2)(a).

We agree with the district court that probable cause was sufficiently demonstrated. When evaluated in light of the Pennys' known drug activity, the great discrepancy between the Pennys' legitimate income and the value of the defendant assets that they had acquired, improved and maintained presented a reasonable ground for believing that there was a nexus between the property seized and the narcotics activity to which the Pennys were linked. Contrary to Mrs. Penny's contention, "[a] direct connection between the property subject to seizure and the illegal activity that renders the items forfeitable need not be shown in order to establish probable cause." *Edwards*, 885 F.2d at 390. Significantly, we have held that,

> where a defendant's verifiable income cannot possibly account for the level of wealth displayed and where there is strong evidence that the defendant is a drug trafficker, then there is probable cause to believe that the wealth is either a direct product of the illicit activity or that it is traceable to the activity as proceeds.

*Id.* Evidence of prior convictions for drug possession or trafficking is certainly admissible in a probable cause determination. In addition, hearsay testimony may properly be considered in a probable cause showing. Information from confidential sources is often proffered as part of the basis for probable cause; the district court must decide whether that information was sufficiently reliable and adequate by considering the informant's previous "track record" and the totality of the circumstances. *See id.* (stating that "probable cause analysis looks to the totality of the circumstances surrounding the situation"). In this case, at least four of the informants reported their first-hand observations, and some of their information overlapped or was independently corroborated. Those statements thus have indicia of reliability. Our plenary review leads us to conclude that the government established a reasonable ground for belief that there was a nexus between the seized property and the

Cir.1995) (nexus) with *United States v. Certain Real Property Located at 16510 Ashton*, 47 F.3d 1465, 1469 (6th Cir.1995) (substantial connection)), and Fourth Circuit cases (*United States v. Chandler*, 36 F.3d 358, 362 (4th Cir.1994), *cert.*

*denied*, —— U.S. ——, 115 S.Ct. 1792, 131 L.Ed.2d 721 (1995) (nexus) with concurring opinion, 36 F.3d at 368 (substantial connection) and *United States v. Bizzell*, 19 F.3d 1524, 1527 n. 6 (4th Cir.1994) (same)).

illegal narcotics activity. We uphold the determinations of both district court judges that the original complaint and affidavit met the probable cause threshold.

█ Following the standard set forth above, we must conclude that the government met its burden of establishing probable cause. The burden then shifted to Mrs. Penny to demonstrate that the defendant property was not used in connection with drug activities. *See United States v. Michelle's Lounge*, 39 F.3d 684, 700 (7th Cir.1994) ("The claimant, of course, must bear the burden of proving the absence of probable cause; any other allocation of proof is prohibited by the statute."); *United States v. Fleming*, 677 F.2d 602, 609 (7th Cir.1982) (describing claimant's burden to show that currency obtained in drug trafficking was not "furnished or intended to be furnished ... in exchange for a controlled substance"). Mrs. Penny made no such showing. The district court might have determined at that point that Mrs. Penny had failed to rebut the government's proof of probable cause; it then could have held that the original showing of probable cause supported a forfeiture judgment. *See On Leong*, 918 F.2d at 1292 (summary judgment appropriate when the government establishes probable cause and claimant fails to show the facts constituting probable cause did not exist). However, the government presented further evidence to bolster its forfeiture claim, in the form of an amended verified complaint and affidavit, and then sought summary judgment. Mrs. Penny responded with affirmative defenses, but those defenses failed to persuade the district court, and she has not appealed those rulings. Mrs. Penny failed to respond to the government's 12(m) statement; therefore she has in fact admitted that the properties were purchased with illegal proceeds from narcotics trafficking or were used to facilitate the drug trade.[14] Mrs. Penny's belated challenge to the probable cause determination, in the motion to reconsider, provides no basis for holding that the district court abused its discretion. The motion for reconsideration was properly denied.

## B. *Denial of Motion for Continuance*

Claimants submit that the district court abused its discretion by denying their request for a continuance. They contend that, although their request was not accompanied by the required Rule 56 affidavit, they had presented a good-faith reason for the continuance: that the government had seized all their records by which they could establish a defense to the forfeiture action. In their reply brief, claimants argue that the denial of that request for a continuance may deprive them of an adequate opportunity to be heard.

█ We review the denial of a continuance motion for abuse of discretion. *On Leong*, 918 F.2d at 1294. A party seeking the protection of Rule 56(f) [15] must make a good faith showing that it cannot respond to the movant's affidavits. *Id.* at 1295. The rule requires the filing of an affidavit stating the reasons for a claimant's inability to submit the necessary material to the court. In this case, claimants did not file the required affidavit. In addition, the district court stated, their request for additional time to examine boxes of documents lacked specificity concerning what information they hoped to uncover and how it would refute the government's showing of probable cause. The record indicates that claimants were also dilatory in conducting discovery and had failed to review the documents at issue when given the extra time for their examination. *See United States v. Bob Stofer Oldsmobile–Cad-*

14. Claimants admit they failed to respond to the government's 12(m) statement, but insist that, even by admitting those "facts," they did not admit that the government had satisfied the probable cause burden because it was based on such unreliable hearsay evidence. As we demonstrated above, this position is completely without merit.

15. The rule upon which the claimants rely provides:

**Rule 56. Summary Judgment**
**(f) When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

*illac, Inc.*, 766 F.2d 1147, 1153 (7th Cir.1985) ("A party who has been dilatory in discovery may not use Rule 56(f) to gain a continuance where he has made only vague assertions that further discovery would develop genuine issues of material fact."). For those reasons the court did not abuse its discretion in refusing a continuance at the summary judgment stage.[16]

### C. Lack of Predeprivation Hearing

 Finally, the claimants submit that there should have been an adversary hearing before their property was seized. They rely on the Supreme Court's pronouncement in *United States v. James Daniel Good Real Property*, —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). They admit that they raised the issue in the district court only in their reply brief in support of the motion to reconsider, but note that the Supreme Court did not decide the *Good* case until after they had filed the motion for reconsideration. Therefore, the reply was their first opportunity to invite the attention of the district court to this important development in the law of forfeiture. We agree with the claimants that, because they raised the matter at the first opportunity, it cannot be considered waived. We also agree, in concert with the other appellate courts that have applied *Good* retroactively, that the holding in *Good* is applicable to this case as it is to all cases not final on the date of the Supreme Court's decision.[17] We have no quarrel with those decisions.

 The district court did not dispute the applicability of *Good* to this case. Rather, it declined to consider its application at such a late stage in the proceedings. In declining to address the merits of the claimants' damages argument, the district court stated:

As final judgment has been entered in this case and we are not going to disturb that judgment, we will not entertain Penny's argument that she is entitled to damages because she did not receive a pre-seizure hearing as found necessary by the Supreme Court in *U.S. v. James Daniel Good Real Property*, —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). She may file suit seeking damages if she desires to pursue this course and is satisfied that *James Daniel Good* applies retroactively.

Memorandum Opinion of January 25, 1994, R.208 at 8–9. A motion for a new trial or to alter or amend the judgment is committed to the sound discretion of the district court.[18] Consequently, we approach our assessment of the district court's ruling with great deference. Nevertheless, several considerations, in addition to a general concern for judicial economy, compel us to conclude that the district court's approach to the late arrival of *Good* on this litigation scene cannot be affirmed. First, as we have noted earlier, we agree that the holdings of the other circuits that *Good* applies retroactively are correct. Therefore, although the district court left the matter open, we are satisfied that *Good* applies to this case. Second, our independent examination of the record reveals that the district court misapprehended the gist of the claimants' argument. Although their position is not stated in the clearest of terms, we believe that, fairly read, the claimants' contention was broader than that perceived by the district court. We read the reply to the

---

**16.** *Cf. Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1149 (7th Cir.1989) (stating that, when record shows that underlying records were made available and affidavit was never filed requesting continuance, company cannot complain about burden that inspecting underlying records would have imposed).

**17.** *United States v. Real Property Located at 20832 Big Rock Dr.*, 51 F.3d 1402, 1405–06 (9th Cir. 1995); *United States v. One Parcel of Real Property, Located at 9638 Chicago Heights*, 27 F.3d 327, 329 (8th Cir.1994); *see also United States v. Certain Real Property Located at 16510 Ashton*, 47 F.3d 1465, 1470 (6th Cir.1995) (finding that earlier circuit decisions were superseded by *Good;*

applying it to the case before it); *United States v. Premises Known as RR # 1, Box 224, Dalton*, 14 F.3d 864, 869 n. 5 (3d Cir.1994) (acknowledging applicability of *Good*, noting that parties have not raised it). We note that our circuit has implicitly acknowledged the retroactive applicability of *Good* in *Michelle's Lounge*, 39 F.3d at 702. In that case the government, after *Good* was decided, stopped collecting rent on the defendant property and returned the rent paid.

**18.** *Moore v. State of Indiana*, 999 F.2d 1125, 1128 (7th Cir.1993); *Walden v. Illinois Cent. Gulf R.R.*, 975 F.2d 361, 365 (7th Cir.1992).

motion for reconsideration and the briefs filed in this court to argue that *Good* requires the nullification of the forfeiture order because of the failure of the district court to provide an adversary hearing. As an alternate position, the claimants argue that *Good* at least requires that they be paid compensation for the seizure of their realty by an ex parte order.

 We are persuaded that a preferable approach is the one taken by our colleagues in the Sixth Circuit in *United States v. Real Property Known and Numbered as 429 South Main Street*, 52 F.3d 1416 (6th Cir.1995). In that case, through the pen of Judge Boggs, the Sixth Circuit, in reviewing a summary judgment granting a forfeiture such as the one before us, required that the district court revisit the correctness of its judgment because of the intervening decision in *Good*. Despite the fact that the claimants did not raise the applicability of *Good* in the district court, the Sixth Circuit determined that the possibility of a miscarriage of justice required that the district court address *Good* in reaching its judgment on the forfeiture issue. We believe that the approach outlined by Judge Boggs in *429 S. Main Street* is sound as a matter of logic and as a matter of judicial economy. We therefore believe that the district court ought to resolve, at this juncture, the impact of *Good* on this forfeiture action.

To permit the district court to accomplish this task with dispatch, we offer, in the interest of judicial efficiency, the following guid-

ance. As we have noted above, the claimants suggest, albeit with some obliqueness, that *Good* requires an adversary hearing not only with respect to the realty that was listed in the complaint, but also to the remainder of the property with respect to which the government sought forfeiture. *Good* involved the forfeiture of realty:

> In sum, based upon the importance of the private interests at risk and the absence of countervailing Government needs, we hold that the seizure of real property under § 881(a)(7) is not one of those extraordinary instances that justify the postponement of notice and hearing. Unless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture.

*Good*, —— U.S. at ——, 114 S.Ct. at 505. Nevertheless, the Court's notation that it "tolerate[d] some exceptions to the general rule requiring predeprivation notice and hearing" in extraordinary situations in which important governmental interests were at stake, *id.* at ——, 114 S.Ct. at 501, might suggest that the holding in *Good* will later spread its dominion to property other than realty.[19] Several of our colleagues in other circuits have intimated that the issue is an open one.[20] In this case, however, extending *Good* to property other than the realty at stake seems, at best, a difficult task for the claimants. The other property—bank accounts and automobiles—possesses attributes of liquidity and mobility that would make the

---

**19.** The Court, surveying its prior decisions, presented a spectrum within which to place the seizure of realty. It noted that assets susceptible to removal, destruction or concealment could be seized without affording prior notice or hearing. —— U.S. at ——, 114 S.Ct. at 500 (citing *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974)). However, the seizure of kitchen appliances and household furniture required a predeprivation hearing. *Id.* at ——, 114 S.Ct. at 501 (citing *Fuentes v. Shevin*, 407 U.S. 67, 70–71, 92 S.Ct. 1983, 1989, 32 L.Ed.2d 556 (1972)). Moreover, the Court noted that it had found unconstitutional a state statute authorizing the attachment of real estate without prior notice or hearing. *Id.* (citing *Connecticut v. Doehr*, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991)). Because the "seizure of a home produces a far greater depri-

vation than the loss of furniture, or even attachment," *id.*, it concluded that predeprivation notice and hearing were necessary in the absence of extraordinary circumstances.

**20.** *See, e.g., 429 S. Main St.*, 52 F.3d at 1419–20 (discussing the *Good* Court's recognition that not all forfeitures require a hearing; *Board of Governors of the Fed. Reserve Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 1001 (5th Cir.1994) (applying *Good*'s "exigent circumstances" definition and *Mathews* balancing test to hold that, following broad assets freeze, a postdeprivation hearing was sufficient to satisfy due process); *Organizacion JD Ltda. v. U.S. Dep't of Justice*, 18 F.3d 91, 94 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2679, 129 L.Ed.2d 813 (1994) (noting that *Good* did not address whether personal property, like realty, was protected by the Fifth Amendment).

possibility of conversion substantial.[21] Therefore, it would appear that the considerations that justified the seizure of the yacht in *Calero–Toledo,* 416 U.S. at 679, 94 S.Ct. at 2089–90,[22] would also permit initial seizure on an ex parte basis here. Because this matter has never been addressed by the district court, a proper respect for its prerogatives requires that we permit it to address the issue if the defendants should choose to pursue the issue. However, we emphasize that, in evaluating any such submission by the defendants, the district court must give considerable weight to the possibility of the property's disappearing if the government is not allowed to proceed on an ex parte basis.

■■■ There can be no question that the holding in *Good* applies to realty. However, the Supreme Court was careful to note that, even with respect to this property, there may be times when exigent circumstances will excuse the necessity of a hearing. The existence of such circumstance is a fact-specific issue that ought to be raised and litigated in the district court. On remand, the government is free to rely on this exception. We note that the Supreme Court has made clear in *Good* that this exception may be established only if the government can demonstrate that less restrictive alternatives such as a lis pendens are not realistic measures for the protection of the government's interest in preventing the sale, destruction or continued illegal use of the real property. *Good,* —— U.S. at ——, 114 S.Ct. at 505.

■■■ We also believe that it is appropriate to provide, for the assistance of the district court, guidance with respect to the available remedies for a failure to provide notice and hearing before seizure. As Judge Kozinski noted in *United States v. Real Property Located at 20832 Big Rock Drive,* 51 F.3d 1402 (9th Cir.1995), the cases reflect some difference in approach on this issue. The Eighth Circuit is of the view that *Good* requires dismissal of the forfeiture action

with leave to file a new action if the statute of limitations has not run. *See One Parcel of Real Property, Located at 9638 Chicago Heights,* 27 F.3d 327, 330 (8th Cir.1994). The Second, Third, and Ninth Circuits take the view that the illegal seizure does not, standing alone, require that the property be immune from forfeiture. *See 20832 Big Rock Dr.,* 51 F.3d at 1406; *United States v. Premises Known as RR # 1,* 14 F.3d 864, 869 n. 5 (3d Cir.1994); *United States v. Premises and Real Property at 4492 South Livonia Rd.,* 889 F.2d 1258, 1265–66 (2d Cir.1989). Under this view, the government is responsible, however, for the profits of which the claimant was deprived during the period of illegal seizure. We believe that this latter approach provides an effective, but measured, remedy for the violation of the claimant's rights. It is the responsibility of the courts to construct a remedy for a constitutional violation that is tailored to the injury caused by the violation. *Milliken v. Bradley,* 418 U.S. 717, 744, 94 S.Ct. 3112, 3127, 41 L.Ed.2d 1069 (1974) ("[T]he scope of the remedy is determined by the nature and extent of the constitutional violation."). We believe that the approach of the majority of the circuits reflects that guiding principle.

### Conclusion

For the foregoing reasons, we affirm in part the judgment of the district court and remand the case for proceedings consistent with this opinion. On remand, the district court is directed to determine whether there were exigent circumstances justifying the seizure of the claimants' real property without an adversary hearing. If the district court determines that such exigent circumstances did not exist, it must determine the damages, if any, suffered by the claimants as a result of the deprivation of their real property from the date of the seizure to the date of the first adversary hearing. If the claim-

---

**21.** We note that the government's motion seeking to file this case under seal stated: "Many of the assets which are the subject of this forfeiture complaint are mobile or liquid or can be easily liquidated if the owners of the property learn of the filing of this complaint prior to service of the warrant. Additionally, ... many of the assets may be concealed and therefore unavailable for forfeiture." R.5.

**22.** In *Good,* the Supreme Court noted with approval the use of ex parte seizure in *Calero–Toledo. See* —— U.S. at ————, 114 S.Ct. at 502–03.

ants persist in their contention that other seized property was not subject to forfeiture on an ex parte basis, the district court will evaluate that claim according to the methodology outlined in *Good*. The parties will bear their own costs in this court.

AFFIRMED IN PART AND REMANDED IN PART.