108 F.3d 1380
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Symeon FRANGOS, also known as Simon Frangopoulos, Defendant-Appellant,
and
Massachusetts Mutual Life Insurance Company, Defendant.
 No. 96-1331.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 25, 1997.*
Decided March 11, 1997.
 
 Before CUMMINGS, EASTERBROOK and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 The United States of America, for and on behalf of the Small Business Administration ("SBA"), filed a complaint for declaratory judgment against Symeon Frangos and the Massachusetts Mutual Life Insurance Company ("Mass Mutual"). The complaint alleged that in 1978, Frangos, by his written guaranty, had unconditionally guaranteed payment of a $500,000 loan made by the Des Plaines Bank ("Bank") to three businesses owned by Frangos. The complaint further claimed that as security for his guaranty, Frangos assigned his Mass Mutual life insurance policy to the Bank and the SBA. In 1982, the Federal Deposit Insurance Corporation, as receiver of the Bank, assigned the note, guarantee, and collateral assignment to the SBA. In December 1991, apparently because of delinquency in payment on the $500,000 loan, the SBA notified Frangos that it intended to exercise its right to the surrender value of the Mass Mutual policy. Mass Mutual refused to make payment to SBA or to accept the surrender of the policy. The complaint sought a declaration that the SBA had a valid lien on the policy and that it was entitled to its cash surrender value.
 
 
 2
 Frangos's "Answer, Counter-Claim and Cross-Claim" was struck in its entirety by the district court for various deficiencies; he then filed an "Amended Answer, Counter-Claim and Cross-Claim," which was accepted. Next, Frangos filed a motion for judgment on the pleadings, which the district court denied. The United States then moved for summary judgment. Frangos responded initially with an affidavit telling his version of events and a motion to extend time to respond. The district court granted the motion for extension of time, and soon thereafter granted a second such motion, occasioned by the withdrawal of Frangos's attorney, who had been suspended from the practice of law by the State of Illinois. At a hearing on December 12, 1995, Frangos's new counsel was given until December 27 to file a response to the motion for summary judgment. On December 29, Frangos filed a third motion for extension of time to respond. At a hearing that day, the district court denied the motion for extension of time, and granted the motion for summary judgment. Frangos appeals.[1]
 
 
 3
 Frangos suggests in one of the argument headings of his opening brief that he is challenging the denial of his motion for judgment on the pleadings, as well as the granting of the government's motion for summary judgment. He does not explicitly complain in the argument itself about the denial of the motion for judgment on the pleadings. Yet, his main argument on appeal--that records fail to show that the Mass Mutual policy was assigned as collateral for the loan--was made only in the motion for judgment on the pleadings, and not in opposition to the motion for summary judgment. It makes more sense to construe this argument as an attack on the denial of the motion for judgment on the pleadings, rather than on the granting of the motion for summary judgment.
 
 
 4
 The district court rejected Frangos's argument, explaining that the origin of the policy assignment is clear from the Authorization and Loan Agreement in which the SBA agreed to guarantee 90% of the loan. As part of the inducement for the Bank to make and for the SBA to guarantee the loan, Frangos agreed to "[a]ssignment of term life or existing life insurance in the favor of Bank and SBA in an amount not less than $500,000.00" on his life. The Authorization and Loan Agreement is strong evidence that the Mass Mutual policy was in fact assigned as collateral for the loan. The district court correctly concluded that this evidence precluded judgment on the pleadings.
 
 
 5
 In a single sentence in his brief, Frangos contends without elaboration that the district court abused its discretion in denying his new attorney's motion for extension of time to respond to the motion for summary judgment. It is doubtful that this one-sentence "argument" is sufficient to raise the issue on appeal. In any event, the argument must fail, because Frangos's attorney failed to use an affidavit to give his reasons for seeking the extension of time, as required by Fed.R.Civ.P. 56(f). United States v. All Assets and Equipment of West Side Bldg. Corp., 58 F.3d 1181, 1190 (7th Cir.1995), cert. denied sub nom. Penny v. United States, 116 S.Ct. 698 (1996). Moreover, Frangos does not show how he was prejudiced by the denial of the motion for extension of time--that is, he does not explain what additional evidence he might have relied upon if he had more time, no less why such evidence would have defeated the motion for summary judgment.
 
 
 6
 Instead, Frangos relies on the affidavit that he submitted in opposition to the motion for summary judgment. In that affidavit and again on appeal, Frangos asserts that he did not know what he was signing, due to Bank and SBA misrepresentations and his difficulties in understanding English. His position is fatally undermined by admissions he made on two occasions during the proceedings in the district court.
 
 
 7
 At a hearing after the filing of the affidavit, the district judge asked Frangos, "[A]t the time of the closing of this loan with the SBA ... you had a lawyer representing you, did you not?" Frangos responded, "Well, I had Mr. Schwartzman. He always filed through my files and the papers with the Bank and the SBA." He subsequently added, "Well, my lawyer was always looking at the papers." A loan application from March 1977 listed Mark Schwartzman as an attorney for Grand Plaza Hotel, Inc., and a compensation agreement from February 1978 confirms that Schwartzman performed services in connection with the loan at issue in this case. Thus, it was appropriate for the district court to find that Frangos was represented by counsel in the loan transaction, and to conclude that Frangos did not justifiably rely on alleged misrepresentations by the Bank or by the SBA officers.
 
 
 8
 Furthermore, in his answer to the complaint, Frangos stated the following:
 
 
 9
 On or about January [ ] 1978 at the offices of the Des Plaines Bank, the said Bank and S.B.A. falsely and fraudently [sic] represented to Defendant ... that the Defendant ... [was] required to sign the said Collateral Assignment of the subject policy pursuant to the said loan papers for said loan that had already been signed by Defendant ... and that the proceeds from said loan guaranteed by the S.B.A. could not be disbursed until said Collateral Assignment was signed by Defendant ... as required to be done by said loan papers guaranteed by the S.B.A.
 
 
 10
 Amended Answer at p 19(2). Frangos here admits that the Bank and the SBA represented to him that he was required to sign the "Collateral Assignment of the subject policy"--which in the context of the answer clearly means the Mass Mutual policy.[2] In other words, he admits that he knew that he was signing a collateral assignment of the Mass Mutual policy.
 
 
 11
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 We concur with the parties that the judgment is final and appealable
 
 
 [2]
 He also claims that the Bank and the SBA acted "falsely and fraudently [sic]" in representing that he was required to sign the assignment and that the proceeds of the loans could not be disbursed otherwise. In fact, as the government notes, these representations appear to be true, in light of the Authorization and Loan Agreement discussed supra