In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-3909, 99-3910

United States of America,

Plaintiff-Appellee,

v.

Josue Santiago,

Defendant,


Appeals of:   Carlos M. Santiago
and Carlos E. Santiago,

Claimants-Appellants.



Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 96-CR-70--Thomas J. Curran, Judge.


Argued June 2, 2000--Decided September 18, 2000



        Before Flaum, Chief Judge, and Evans and Williams,
Circuit Judges.

        Williams, Circuit Judge.  Carlos E. Santiago and
Carlos M. Santiago seek the return of funds
forfeited to the government following family-
member Josue Santiago's conviction on charges of
conspiracy to distribute cocaine. They contend
that certain funds included in the district
court's forfeiture order belong to them and are
not the proceeds of illegal activities. With
limited exceptions, the district court rejected
the Santiagos' claims. We affirm.

I

        On July 9, 1996, a federal grand jury returned
a ten-count superseding indictment against Josue
Santiago and his father, Carlos E. Santiago./1
The indictment charged Josue with conspiracy to
distribute cocaine and possession with the intent
to distribute cocaine, and charged Josue and his
father with laundering the proceeds of cocaine
trafficking and conspiracy to commit that crime.
The indictment also sought the forfeiture of the
proceeds of the defendants' drug-related

activities and all property used to facilitate those activities. In particular, the indictment identified approximately $530,000 held in thirteen separate bank accounts in the names of various Santiago family members including Josue, Carlos E., and Josue's brother, Carlos M.

Eventually, Josue agreed to plead guilty to conspiring to distribute cocaine in exchange for the dismissal of the remaining charges against him and the dismissal of all the charges against his father. Josue also agreed to "forfeit any right, title and interest in the property described in the forfeiture provision of the indictment." The district court accepted Josue's plea and sentenced him to 92 months' imprisonment.

After sentencing, and on the government's motion, the district court entered an order forfeiting to the government Josue's right to the property identified in the indictment. Then, pursuant to 21 U.S.C. sec. 853(n)(1), the government published notice of its intent to dispose of the forfeited property. In response, Carlos E. and Carlos M. filed a joint motion for return of property, asserting that the funds in the thirteen bank accounts included in the forfeiture order belong to one or the other of them and are not the proceeds of illegal activities.

In January 1998, the district court held a series of hearings on the Santiagos' motion. Jeffery Doss, an investigator with the Milwaukee County, Wisconsin, District Attorney's Office testified about the evidence that led law enforcement officials to suspect that the funds in the various bank accounts at issue were the proceeds of Josue's illegal drug trafficking activities and were simply being held in Carlos E.'s and Carlos M.'s names to conceal and protect the funds. He testified that officers searching Josue's residence at the time of Josue's arrest discovered numerous financial documents, many of which were addressed to the residence Carlos E. and Carlos M. shared, not Josue's residence. Doss also noted that a subsequent search of Carlos E.'s residence uncovered documents relating to the accounts at issue in this case, including a notebook in which Carlos E. kept track of his finances and envelopes and bank statements from a Puerto Rican bank.

Doss further testified that two confidential informants provided information regarding Josue's financial dealings. One informant told police that Josue told him that he did not keep bank accounts or property in his name, but rather kept his assets in the names of relatives and

girlfriends. This same informant also told police that Josue told him that he had money in Puerto Rican bank accounts. The other confidential informant told police that Josue had several hundred thousand dollars at a pair of area banks in his father's name and in his brother's or sister's name. The information provided by these confidential informants was later confirmed by the existence of accounts at the banks identified, in the names of Carlos E., Carlos M., and Neida Collazo (Josue's sister). Investigation of these accounts eventually led police to the rest of the accounts the government seeks to have forfeited, all of which were in the names of various Santiago family members.

Doss finally testified that while investigating Josue's illegal activities in Milwaukee, the police learned that Josue had a prior arrest for a drug-related offense in California. Police investigating that crime had discovered several bank accounts in the names of Josue, Carlos E., and Carlos (no middle initial) Santiago, which Josue admitted held the proceeds of his crimes. Police also discovered that someone identifying himself as Carlos Santiago attempted to close these accounts shortly after Josue's arrest.

The government also elicited testimony from, and submitted exhibits prepared by, Jeff Mesarich, an Auditor with the U.S. Attorney's Office, who had conducted an analysis of the accounts at issue and had examined the Santiagos' financial circumstances. With respect to each account at issue, Mesarich described the history of the account, including the names on the account, the likely sources of deposits, and other evidence relating to the account. For instance, he explained how the money in many accounts moved through a tortured history of successive accounts and the name or names on certain accounts changed several times. In addition, he pointed to documentary evidence establishing that Carlos E. himself recognized that several of the accounts in his name contained Josue's funds.

Mesarich further testified about the income Carlos E. and Carlos M. declared on their tax returns over the years prior to Josue's arrest. Before his retirement in the early 1980s, Carlos E.'s reported wages ranged between approximately $8,600 and $22,800. After his retirement, Carlos E.'s reported pension and retirement income varied between approximately $12,200 and $18,300 (with the exception of one year in which his income was approximately $3,000). Carlos E. also enjoyed substantial interest income beginning in the early to mid-1980s (when Josue purportedly began his illegal activities), which at one point exceeded $27,000 dollars. The evidence regarding

Carlos M.'s reported income is restricted to the 1990s, but reveals that his combined income from wages and unemployment benefits ranged between approximately $8,600 and $13,200 and that he reported virtually no interest income.

Carlos E. and Carlos M. also testified in support of their motion, offering details regarding their income. Carlos E. testified that both he and his wife (before her 1991 death) had been wage-earners most their lives, that they received income from certain rental properties, that one rental property was sold for $20,000 in the late 1970s, and that he had inherited $10,000 from his father. Carlos M. testified that he had worked nearly thirty years at three successive jobs, earning between five and eight dollars per hour. Neither Carlos E. nor Carlos M., however, offered any documentary support for their assertions regarding their income or otherwise accounting for how they accumulated so much money. Both simply asserted that the money in the accounts they claim derived from income they saved over the years.

In cross-examining the Santiagos, the government elicited testimony regarding the Santiagos' expenses. Carlos E. admitted that he paid property taxes, utility bills, health insurance premiums, and thousands of dollars on health care not covered by insurance. Carlos M. conceded that he paid child support for two children and paid many of the bills he and his father accumulated. Moreover, the government successfully impeached Carlos E. with evidence that he himself had previously recognized (in the notebook detailing his financial matters and in a passbook for one of the accounts at issue) that certain funds he claims actually belonged to Josue. Likewise, the government successfully impeached Carlos M. with his grand jury testimony, which omitted any mention of the funds he claims despite questions regarding what bank accounts he had.

After considering all the evidence presented at the hearing and reviewing post-hearing briefs, the district court issued a thorough, written decision finding for the government. The district court first reaffirmed its earlier oral ruling that the government had discharged its initial burden of establishing probable cause to believe a nexus exists between the funds the Santiagos claim and illegal drug activity. The court then carefully examined the evidence in the record regarding each account at issue. Based on this review of the evidence, the district court concluded that the Santiagos had met their burden of establishing that they are the legitimate and rightful owners of the claimed funds in five of the accounts (one of the four Carlos M. claims,

four of the nine Carlos E. claims, containing just under $25,000 together), but had failed to meet their burden with respect to the remaining eight accounts. Accordingly, the district court released to the Santiagos the funds in the former accounts and divested the Santiagos of their interests in the funds in the latter accounts. The Santiagos now appeal the district court's rulings with respect to the funds not released to them.

II

Despite the fact that this case is a criminal drug forfeiture proceeding, the district court and the parties have employed the legal standards applicable to civil drug forfeitures./2 We have doubts about whether this is correct, but neither party makes anything of this issue nor have we discovered any cases addressing the topic. Thus, we will analyze the Santiagos' appeals using the same civil drug forfeiture standards the district court used./3

Under these standards, a court adjudicating a forfeiture claim employs a burden-shifting method of proof. 21 U.S.C. sec. 881(d), incorporating 19 U.S.C. sec. 1615; United States v. All Assets & Equip. of West Side Bldg. Corp., 58 F.3d 1181, 1188 (7th Cir. 1995). The government has the initial burden of establishing probable cause to believe that the property at issue has a connection with illegal drug activity and is therefore subject to forfeiture. United States v. $87,118.00 in United States Currency, 95 F.3d 511, 518 (7th Cir. 1996); All Assets, 58 F.3d at 1188. Probable cause exists if the government has established that the totality of the circumstances demonstrates a nexus between the property and illegal drug activity. $87,118.00, 95 F.3d at 518; All Assets, 58 F.3d at 1188-89. Once the government has met its burden, the ultimate burden shifts to the claimant to prove by a preponderance of the evidence that the property at issue has no connection with illegal drug activity and is therefore not subject to forfeiture. $87,118.00, 95 F.3d at 518; All Assets, 58 F.3d at 1189. If the claimant fails to satisfy this burden, the government's initial showing will suffice to support a forfeiture order. $87,118.00, 95 F.3d at 518; All Assets, 58 F.3d at 1189.

The Santiagos claim that (1) the government did not establish probable cause to believe that any of the funds to be forfeited had a connection to Josue's illegal drug activity and (2) they proved by a preponderance of the evidence that the funds belonged to them and had no connection to Josue's illegal drug activity./4 The Santiagos'

arguments are unpersuasive, however.

A.   Probable Cause

As our recitation of the facts of this case demonstrates, there is considerable evidence establishing a nexus between the money the government seeks to have forfeited and Josue's illegal drug activity. This evidence includes: (1) bank records and family financial records linking Josue to many of the bank accounts at issue; (2) drug dealing by Josue in California during the 1980s and in Milwaukee during the 1990s that coincided with large infusions of cash into bank accounts held by family members; (3) information from two confidential informants that Josue used family members as nominees to hold drug money in various bank accounts; (4) Josue's and Carlos E.'s history of attempting to hide and launder drug proceeds in California during the 1980s; (5) the constant transfer and movement of funds between various family bank accounts and the repeated changing of names on those accounts; and (6) the discrepancy between legitimate income earned by Carlos M. and Carlos E. and the amount of money in the bank accounts each claims.

Contrary to the Santiagos' protests, this evidence is not simply evidence regarding the unexplained existence of large amounts of money held in a suspicious manner. Contrast United States v. $506,231 in United States Currency, 125 F.3d 442, 451-54 (7th Cir. 1997). Rather, taken as a whole, the evidence connects Josue's known and admitted illegal drug activity to the money the Santiagos claim. Especially damning is the evidence establishing Josue's practice of hiding his drug proceeds in bank accounts held by family members. As the evidence demonstrates a nexus between the funds at issue and Josue's illegal drug activity, probable cause to believe the funds are subject to forfeiture exists. Therefore, the district court did not err in concluding that the government had discharged its initial burden of proof.

B.   Preponderance of the Evidence

The Santiagos' effort to challenge the district court's preponderance of the evidence ruling fares no better than their probable cause challenge. To begin with, the Santiagos proceed as if the government shouldered the ultimate burden of proof and its failure to indisputably establish that each dollar in each account derived from Josue's illegal drug activity requires judgment in their favor. Of course, the opposite is true; the burden was on the Santiagos to establish that they own the funds at issue and that the funds derive from legitimate sources.

See $87,118.00, 95 F.3d at 519-20; All Assets, 58 F.3d at 1190.

The evidence offered by the Santiagos to establish these propositions is far from overwhelming, however. Their evidence consists entirely of their own self-serving statements as to the source of the funds at issue. They offered no independent verification of their claims. Moreover, the district court specifically found that neither Carlos E. nor Carlos M. testified credibly. In light of these facts, it is difficult to give the Santiagos' evidence much weight at all.

Still, the Santiagos' evidence convinced the district court that the funds in five of the accounts at issue should not be forfeited. On the other eight, however, the district court concluded otherwise. In making these determinations, the district court thoroughly examined each of the accounts at issue and carefully weighed the evidence presented by the parties. We see no need to rehash this analysis, as the Santiagos have brought nothing to our attention that causes us to question the district court's conclusions. Suffice it to say that there is sufficient evidence to allow a fact-finder to conclude that the money in each of the accounts claimed by the Santiagos on appeal derived from Josue's illegal drug activities. Cf. $87,118.00, 95 F.3d at 519-20 (rejecting challenge to forfeiture where claimant failed to provide credible explanation for large amounts of money that could be linked to illegal drug activities). Accordingly, we conclude that the district court did not commit reversible error in ruling that the Santiagos had not established by a preponderance of the evidence that the funds at issue on appeal are not subject to forfeiture.

III

The Santiagos' challenges to the district court's forfeiture ruling are without merit. Therefore, we Affirm the judgment of the district court.


/1 Because the defendant and the claimants all share the same last name, we will refer to them by their first names.

/2 In particular, instead of using the standards for contesting a forfeiture set out in 21 U.S.C. sec. 853(n), which governs third-party challenges to criminal forfeiture proceedings, the district court and the parties have used the standards for defending against a forfeiture action identified in 21 U.S.C. sec. 881, which governs challenges

to civil forfeiture proceedings. Contrast United States v. Messino, 122 F.3d 427, 427-28 (7th Cir. 1997) (criminal forfeiture), and United States v. De Ortiz, 910 F.2d 376, 380-81 (7th Cir. 1990) (criminal forfeiture), with United States v. $87,118.00 in United States Currency, 95 F.3d 511, 518 (7th Cir. 1996) (civil forfeiture), and United States v. All Assets & Equip. of West Side Bldg. Corp., 58 F.3d 1181, 1188-89 (7th Cir. 1995) (civil forfeiture).

/3 It is worth noting that while the Santiagos' appeals were pending, Congress enacted the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202 (2000), which significantly altered the standards and procedures applicable to civil forfeiture proceedings. This enactment, however, has no effect on the present appeals since, with one exception not relevant here, it applies only to forfeiture proceedings commenced on or after August 23, 2000. Id. sec. 21, 114 Stat. at 225.

/4 It is not entirely clear from the Santiagos' brief whether they contest the district court's preponderance of the evidence ruling on each of the accounts or only on certain ones. To be on the safe side, we assume the Santiagos challenge the district court's ruling on each account.