In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-2103 & 00-2351

United States of America,

Plaintiff-Appellee,

v.

1948 South Martin Luther King Drive,
Springfield, Illinois, et al.,

Defendants,

Appeals of:  Bruce D. Locher

and

Marvin Logan, Prince E. Logan,
and Cleveland Logan,

Claimants-Appellants.

Appeals from the United States District Court
for the Central District of Illinois, Springfield Division.
No. 97-3022--Richard Mills, Judge.

Argued March 1, 2001--Decided November 5, 2001


   Before Harlington Wood, Jr., Manion, and
Diane P. Wood, Circuit Judges.

   Manion, Circuit Judge.  The United States
filed a civil forfeiture action against
18 defendant real estate properties, and
an amended complaint added 13 vehicles as
defendant properties. Claimants Marvin
Logan, Cleveland Logan and Prince Ella
Logan filed claims to the properties and
answers to the amended complaint./1
After a bench trial, the district court
ordered 15 real estate properties and
three vehicles forfeited to the United
States. The claimants filed a
consolidated direct appeal of the
judgment of forfeiture, and their
attorney, Bruce Locher, appeals an order
imposing sanctions against him. We affirm
with respect to the order of forfeiture
and remand the matter for the limited
purpose of providing Locher with a
hearing on the issue of sanctions.

I.

According to the First Amended Complaint, Melvin Logan was involved in the distribution of marijuana, cocaine and crack cocaine in the Springfield, Illinois area from 1982 through 1997. According to the complaint, Melvin used his drug proceeds to purchase numerous parcels of real estate and vehicles, including the defendant properties. To avoid detection by the authorities, he bought the property using friends' and family members' names. An investigation by the Drug Enforcement Administration and the Internal Revenue Service revealed that Melvin himself did not hold title to any real property or any vehicles except two used cars. Besides purchasing homes with the drug proceeds, Melvin also remodeled them, paying for the construction supplies with cash and paying the workers in cash or cocaine. He then rented the properties as Section 8 rental properties, thereby guaranteeing himself receipt of government rents. Melvin was indicted on July 10, 1998 on a number of drug charges, and he eventually pleaded guilty to conspiracy to distribute cocaine and crack cocaine and conspiracy to launder money by purchasing properties with drug proceeds and placing properties in the names of his family members.

Prior to the conviction, on January 27, 1997, the United States government filed a civil forfeiture complaint against 18 pieces of real estate that Melvin allegedly purchased with his drug proceeds or which were used to facilitate his drug transactions. In response, the claimants filed pro se claims to their respective properties. They also filed answers to the forfeiture complaint. On May 15, 1997, the government filed an amended complaint, adding 13 vehicles as defendant properties. The claimants, now represented by counsel, each filed another claim and answer to the amended complaint.

On March 3, 1998 the court entered a Rule 16 scheduling order, directing the parties to complete discovery by August 31, 1998 and to file dispositive motions by September 14, 1998. The court also set a trial date for December 1, 1998. On November 3, 1998, appellant Bruce Locher was substituted as an attorney for Melvin. On November 17, 1998, at the final pretrial conference, Locher made an

oral motion to reopen discovery and to continue the entire trial. The court gave Locher until March 19, 1999 to conduct discovery, but only as to Melvin's claim, and allowed Locher to amend Melvin's answer to reflect any relevant factual matters discovered during discovery. The court also postponed the trial date until April 6, 1999.

Locher did not file any dispositive motions by the March 19, 1999 deadline; instead, he waited until April 1, 1999 to seek leave to file a motion to dismiss. The district court denied Locher's motion stating "the Federal Rules of Civil Procedure allow for modification of schedules 'on good cause and by leave of' the Court. Fed. R. Civ. P. 16(b). No real excuse has been offered for the very long delay in seeking to file the motion to dismiss the Complaint. . . . The extended discovery period is no excuse for the delay since discovery is utterly irrelevant to the simple task of reading the complaint to determine if it was sufficiently specific."/2 Then, on April 30, 1999, Melvin filed a motion to compel answers to interrogatories. Even though it was also untimely, the court granted it in part, directing the government to provide more specific answers to certain interrogatories.

On May 26, 1999, Locher filed a motion for leave to file a motion for production of probation and parole records (including pre-sentence reports) of all identified government witnesses. The court denied this motion because it was an untimely discovery request and because Melvin had failed to show good cause why the district court should deviate from its scheduling deadline.

In response to Locher's most recent untimely motion, the district court also stated that "[f]urther piecemeal, dilatory conduct may justify the imposition of sanctions." Nevertheless, on June 30, 1999, Locher orally moved again for leave to file an amended answer. This request was denied as untimely. Locher then filed another motion to reopen discovery and to exclude certain evidence. The court denied both motions. On July 1, 1999, Locher filed a Motion for Judgment on the Pleadings, raising issues identical to those raised in his proposed motion to dismiss. The

district court denied this motion, stating "as was the case with several other motions, it was filed well after the dispositive motion deadline and is therefore late." The court also denied the motion on its merits.

The district court rescheduled the trial date several times before it finally commenced on August 24, 1999. On the first day of trial, the government moved to amend the complaint (to correct a technical error regarding the proper code citation authorizing the forfeiture of automobiles) and the court granted the motion. Locher then sought leave to file a motion to dismiss the newly amended complaint, which the court granted. Locher then re-filed his same motion to dismiss (which had already been denied by the court). The district court rejected this approach stating "I will not permit another bite at the apple where I've already ruled." But, upon Locher's further request, the court allowed him to file a motion to dismiss relating only to the government's amendment. However, on October 15, 1999, Locher filed the motion to dismiss the amended complaint, essentially restating his arguments from his prior motions to dismiss, rather than focusing on the government's most recent amendment as directed by the court. The court denied his motion, concluding that the government's amendment had nothing to do with the adequacy of the portions of the complaint Locher challenged in his motion. The district court further stated that "it was incredible that they would attempt to file this latest motion to dismiss, given the Court's earlier denial of similar motions based on exactly the same paragraphs of the amended complaint." The court then directed Locher to show cause why he should not be held in contempt of court under Fed. R. Civ. P. 11 for filing frivolous and untimely motions and raising issues which had already been raised to and rejected by the court. In response, Locher, while avoiding a direct answer to the court's rule to show cause order, asked the court not to impose sanctions and sought to withdraw as Melvin's counsel because "the threat of those sanctions interferes with his ability to vigorously represent his client in this matter." On November 12, 1999, the court fined Locher $1,000 for his conduct./3 The district court also denied Locher's motion to withdraw as

Melvin's counsel.

    As the forfeiture proceedings continued, Locher appeared before another district court judge, Judge Jeanne E. Scott, the presiding judge over Melvin's criminal sentencing proceeding, and requested that she release Melvin's pre-sentence report for use in the forfeiture proceeding. Locher did not advise Judge Scott that Judge Mills (the judge presiding over the forfeiture action) had previously denied his May 26, 1999 motion to obtain probation records. Because neither the Assistant U.S. Attorney nor Melvin objected to Locher's request, Judge Scott granted Locher's request for the PSR. Locher's methods were exposed on August 31, 1999 at the forfeiture trial before Judge Mills during the claimants' cross-examination of IRS Agent Sue Roderick. At that time it became apparent that the claimants' attorney (not Locher) was using the PSR. When the attorney explained to Judge Mills that Locher had given it to him, Judge Mills then asked Locher how he obtained the PSR and Locher explained what he had done. Locher also admitted that he had not told Judge Scott that he had previously been denied probation and parole records, but he asserted that his prior motion did not seek Melvin's PSR because it was only "directed towards Government's witnesses. The Government had indicated that they weren't going to call Melvin Logan as a witness in this case."/4 Judge Mills then opined that Locher "appears to have at the least dissembled with Judge Scott and tried to go in the back door and get what he could not get in through the front in this case. Now, dissuade me of that conclusion, Mr. Locher." Locher again argued that his prior motion only involved a request for the records of government informant witnesses, not for Melvin's PSR./5

    Judge Mills allowed further argument between Locher and the government and then stated that he would "hold this matter in abeyance." The court then continued with the bench trial. After the close of evidence, the parties submitted written closing arguments. Before issuing its ruling on the merits, on March 23, 2000, Judge Mills issued a written order sanctioning Locher $1,000 for disobeying an order of the court, for making misrepresentations to the court and for

failing to inform Judge Scott that the material he sought from her had already been denied by him. Locher did not ask the court to reconsider its order imposing sanctions. A few days later, on March 28, 2000, the district court issued an order concluding that probable cause only existed for 18 of the properties, and it ordered the forfeiture of the 15 parcels of real estate and three vehicles./6 The claimants appeal the forfeiture order, and Locher appeals the March 23, 2000 sanctions against him.

II.

A.  Motion for Leave to File Motion to Dismiss

First, we address whether the district court erred in denying Melvin leave to file a motion to dismiss the amended complaint and for leave to file a motion for judgment on the pleadings. As noted above, on March 3, 1998, the court entered a scheduling order directing the parties to complete all discovery by August 31, 1998, and to file all dispositive motions by September 14, 1998. After Locher was substituted as counsel for Melvin on November 3, 1998, the court gave him leave to reopen discovery and to file an amended answer by March 19, 1999. Locher did not take advantage of these extensions, instead filing all of the motions which are the subject of this appeal well after the March 19, 1999 deadline. If a party misses a deadline, Fed. R. Civ. P. 16(b) provides that the "schedule shall not be modified except upon a showing of good cause and by leave of the district judge . . . ." We review a trial court's refusal of a request for an extension for an abuse of discretion. See Jovanovic v. InSink-Erator Div. of Emerson Elec. Co., 201 F.3d 894, 896-97 (7th Cir. 2000).

The district court denied Melvin's motion for leave, finding he did not establish good cause justifying the delay. On appeal, Melvin does not present any facts supporting a finding of cause. Rather, he argues that he did not file the motion for the purpose of delaying trial. This argument misses the mark. The judge is not required to allow a party to file any untimely motion as long as it does not delay trial. Rather, a party must provide the court with good cause to

excuse the tardiness, regardless of whether or not there will be a delay. Courts have a legitimate interest in ensuring that parties abide by scheduling orders to ensure prompt and orderly litigation. See Fed. R. Civ. P. 16(f) (allowing the imposition of sanctions where a party's attorney fails to obey a scheduling order).

Locher entered this case in November 1998. Melvin offers no explanation for why Locher waited until April 1, 1999 to first challenge the complaint. Factual discovery and months of legal analysis are not typically necessary to challenge a complaint's sufficiency. Nor does Melvin claim a necessity in this case. Rather, he claims that the district court abused its discretion because it had extended the trial date several times and allowed the government to amend its complaint on the first day of trial, implying that the district court treated him unfairly. Aside from the fact that the government's amendment involved a minor technicality, Locher's insinuations ignore the fact that, upon entrance to the case, he too was given ample time to conduct discovery and to file an amended answer and motions. Moreover, in almost every instance, even though the district court denied leave, it alternatively addressed the merits of his untimely discovery and dispositive motions, concluding (with respect to the motion to dismiss) that it would be denied on the merits. Under these circumstances, the district court did not abuse its discretion in denying Melvin leave to file the challenged dispositive motions./7

B.  Forfeiture

We now consider the district court's decision forfeiting the remaining claimants' 15 real estate properties and one vehicle. We begin by considering the appropriate standard of review.

1.  Standard of review.

The standard of review for whether probable cause has been established in civil forfeiture cases has not been clearly set forth by our circuit. Typically, though, we review questions of law de novo and questions of fact for

clear error. See United States v. United States Currency Deposited in Account No. 1115000763247 for Active Trade Co., 176 F.3d 941, 944 (7th Cir. 1999). See also Ornelas v. United States, 517 U.S. 690, 699 (1996) (holding in a criminal proceeding that determinations of probable cause and reasonable suspicion are subject to de novo review, although historical facts are reviewed for clear error). But, regardless of the applicable standard of review, our result in this case would be the same.

2. Probable cause.

The claimants argue that the district court erred in finding that the government had established probable cause to seize the defendant properties. The district court correctly set forth the applicable legal framework for assessing a civil forfeiture claim. Such a claim is subject to a burden-shifting method of proof. See 21 U.S.C. sec. 881(d) (incorporating 19 U.S.C. sec. 1615); United States v. Santiago, 227 F.3d 902, 906 (7th Cir. 2000). Initially, the burden is upon the government to show that probable cause exists to believe that the property in question is subject to forfeiture./8 Probable cause exists if "the government has established that the totality of the circumstances demonstrates a nexus between the property and illegal drug activity." Santiago, 227 F.3d at 906. See also Account No. 1115000763247 for Active Trade Co., 176 F.3d at 944. Probable cause is "reasonable ground for the belief of guilt supported by less than prima facie proof but more than mere suspicion." United States v. All Assets and Equip. of West Side Bldg. Corp., 58 F.3d 1181, 1188 (7th Cir. 1995) (citation omitted).

Our review of the record and of the district court's careful and thorough analysis of the voluminous evidence leads us to conclude that there is ample evidence establishing a nexus between each of the defendant properties forfeited and Melvin's drug activity. This evidence includes the testimony of FBI Agent David Hood regarding his investigation into Melvin's drug dealing and regarding the statements of numerous informants he encountered during his investigation who related that Melvin was

known for his method of laundering his drug proceeds by placing money in the property in the names of his friends and family, especially in the names of his father, Melvin, and his sister, Prince Ella, who had legitimate jobs and would not arouse undue suspicion. The government also presented the testimony of IRS Agent Sue Broderick regarding the information she had gleaned from public records, such as deeds, mortgages, financial records, as well as conversations with sellers who corroborated the informants' statements that Melvin used his drug proceeds to purchase property for his family.

The claimants' main argument is that the district court only made generalized findings, rather than individual probable cause determinations, as to each specific piece of property. While the district court did not specifically list each property individually in the probable cause portion of its forfeiture order, referring to each piece of evidence relevant thereto, it made very specific findings, as outlined below, relating to all of the defendant properties. The district court, after painstakingly picking through the relevant evidence,/9 concluded that the informants' statements (provided through the testimony of the agents) "were consistent with one another, they were supported by the property records obtained by Agent Hood, and corroborated by other statements . . . ." Based on this information, the district court made 18 findings of fact, including: No. 2 "Melvin Logan had no source of legitimate income, so he needed a method to launder the money accumulated by his drug selling"; No. 6 "specific real properties were bought with the proceeds of Melvin Logan's drug business, as indicated by the informants"; No. 7 "all the properties, except the property located at 1948 Martin Luther King, were bought during the same time period that Melvin Logan was making a great deal of money selling drugs, and he needed a method to hide the illegal income"; No. 8 "a large and unusual amount of cash was usually involved in these purchases . . . ."; No. 11 "unlike the case with the real properties, most (but not all) of the witnesses' statements and evidence about the vehicles was obtained after the forfeiture complaint was filed"; No. 12 "but Melvin Logan did negotiate the

purchase of the 1994 Cadillac"; No. 14 "the other vehicles were not connected to drug proceeds with any additional evidence that the government obtained prior to the filing of the forfeiture complaint"; and No. 15 "unlike the other real properties involved in this case, the property at 1948 Martin Luther King was purchased in 1971, which is long before the time that Melvin Logan was dealing drugs or conspiring to deal drugs."

More specific findings were not necessary to support the district court's conclusions. In fact, its conclusion that the government failed to establish probable cause for eight properties demonstrates that the court considered the facts relating to each individual count separately. We conclude that these findings of fact were not clearly erroneous. Our own review of the record reveals that there was a nexus between the defendant properties and Melvin Logan's drug dealing. Therefore, we conclude that the trial court properly determined the existence of probable cause with respect to the properties in question.

In challenging the district court's probable cause determination, the claimants also challenge the court's reliance on the hearsay statements admitted through the testimony of Agents Hood and Roderick. We review a trial court's evidentiary rulings for an abuse of discretion. See United States v. $94,000.00 in U.S. Currency, 2 F.3d 778, 788 (7th Cir. 1992). Hearsay and other circumstantial evidence are admissible in determining probable cause, as long as there is "strong indicia of reliability." Account No. 1115000763247 for Active Trade Co., 176 F.3d at 944. The claimants argue that the informants were unreliable. For example, Brian Kirkham was a convicted felon and a cocaine dealer. Likewise, AlJo Sanders was a crack cocaine dealer, a pot smoker and a paid confidential informant. The district court stated that it "did not expect members of the cloth to testify about the intricacies of Melvin Logan's drug dealing and money laundering operation, and the use of witnesses who are cooperating and have criminal histories is not unusual in this context. The impeachment of these witnesses revealed

nothing unusual or out of context." The court further found that Agent Hood's and Agent Roderick's statements were consistent with one another and supported by other reliable evidence, such as the public records and statements of sellers. On the record before us, we cannot say that the district court abused its discretion in admitting the hearsay evidence in question, nor in relying upon it.

One final note. The claimants argue that the district court erred in denying Melvin's motion for leave to file a motion for disclosure of parole and probation records of prosecution witnesses. The claimants claim that they needed this information for purposes of impeachment and cross-examination, and they argue that, in combination with the hearsay evidence that the district court considered, they were denied the opportunity to confront and cross-examine the most damaging witnesses against them, the informants. The district court denied Melvin's motion, stating that it was a late request for additional discovery. As with the dispositive motions discussed above, Melvin's request for these records came long after all the discovery cut-off dates/10 had expired, and he did not and does not set forth good cause for his tardiness. Nor does he set forth a compelling reason for the underlying request. The claimants do not explain what information these documents would have provided that would have been useful to them in cross-examining the witnesses. Of course, they were entitled to impeach the informants on cross-examination as if they had testified themselves. See Fed. R. Evid. 806. In fact, they did so in many instances and, as noted, the district court knew that many of the informants had colorful criminal histories and reputations for being dishonest. The district court's forfeiture order reveals that it factored this knowledge into its credibility assessments of the agents' testimony. Lastly, the claimants certainly could have called the informants, many of them friends or acquaintances of the Logan family, as witnesses during their own case-in-chief. Accordingly, we conclude that the district court did not abuse its discretion in denying Melvin leave to file an untimely motion for probation and parole records.

3. Burden shifts to claimants for rebuttal.

A finding of probable cause is not the end of the inquiry, however, because the burden then shifts to the claimants to prove by a preponderance of the evidence that the property is not subject to forfeiture. See West Side Bldg. Corp., 58 F.3d at 1189. Without a sufficient rebuttal, the government's initial showing of probable cause will suffice to support the forfeiture order. Id. Thus, the claimants needed to provide the court with evidence that the properties in question had no connection with illegal drug activity, see Santiago, 227 F.3d at 906, and were instead purchased with funds acquired from legitimate sources. The claimants attempt to do this by asserting that they lived frugally, they grew their own food, they saved money from employment and rental property income, and they stashed substantial amounts of cash in their socks, in gallon jugs and in their homes. The claimants did not produce any records or witnesses to corroborate their explanation for the source of the moneys used to purchase property.

In this portion of the order, the district court thoroughly addressed each piece of property individually. In every case, the only evidence submitted by the claimants was their own self-serving assertion that the property was theirs, and not purchased with Melvin's drug proceeds. This is insufficient to overcome the government's establishment of probable cause. See Santiago, 227 F.3d at 907 (claimants failed to overcome forfeiture where their evidence consisted entirely of their own self-serving statements and they offered no independent verification of their claims). Moreover, as the district courted noted, the claimants' stories were often inconsistent. As in Santiago, we "see no need to rehash this analysis, as the [claimants] have brought nothing to our attention that causes us to question the district court's conclusions." 227 F.3d at 908.

The claimants also argue, without specifically pointing to any particular evidence, that the district court

incorrectly considered hearsay evidence during this portion of the forfeiture proceeding. However, we note that the district court specifically stated that it would only consider hearsay evidence at the probable cause stage of the proceeding, where it was appropriate. The claimants' conclusory arguments to the contrary do not persuade us that the district court erred.

The claimants also argue that the government should have been required to prove what portion of the down payments and loan payments were made with money derived from drug trafficking. We reject this argument. Once the government has established probable cause, it need not present further evidence. Rather, if the claimants fail to rebut the government's proof of probable cause, the original showing will support the forfeiture order. See West Side Bldg. Corp., 58 F.3d at 1189. To hold otherwise would render the entire burden-shifting analysis meaningless. See Santiago, 227 F.3d at 907 (where claimants proceeded as if government shouldered ultimate burden of proof, court noted that "the opposite is true.").

Lastly, the claimants argue that the forfeiture is punitive in violation of the Excessive Fines Clause of the Eighth Amendment./11 The Supreme Court has interpreted the Excessive Fines Clause to apply to civil fines, including forfeitures. See United States v. Bajakajian, 524 U.S. 321, 331 n.6 (1998) (noting that while traditionally civil forfeitures were considered non-punitive, "it does not follow, of course, that all modern civil in rem forfeitures are non-punitive and thus beyond the coverage of the excessive fines clause."); Austin v. United States, 509 U.S. 602, 621-22 (1993) (although labeled in rem, civil forfeiture of real property used "to facilitate" the commission of drug crimes was punitive in part and thus subject to review under the Excessive Fines Clause). If a fine or forfeiture is punitive, we must then ask whether the fine is excessive by using a "gross disproportionality" test. See Towers v. City of Chicago, 173 F.3d 619, 624 (7th Cir. 1999).

We conclude that the forfeitures in question are not punitive and therefore

not subject to the gross disproportionality test under the Eighth Amendment. In Bajakajian, the Supreme Court determined that the forfeiture under consideration did not "bear any of the hallmarks of traditional civil in rem forfeitures" because the government had not proceeded against the currency itself, instead seeking a criminal conviction of the respondent personally. 524 U.S. at 331-32. It concluded that "the forfeiture serves no remedial purpose, is designed to punish the offender, and cannot be imposed upon innocent owners." Id. at 332. In contrast, the forfeitures under consideration in the present case are truly in rem proceedings. The claimants themselves were not the subject of criminal proceedings, and their conduct is not the cause of the sought forfeitures. And, the properties would not have been forfeited if the claimants had been able to establish that the properties had no connection to Melvin's drug dealing. Accordingly, we determine that the forfeitures in question are not "fines" for purposes of the Excessive Fines Clause of the Eighth Amendment. Cf. Smith v. United States, 76 F.3d 879, 882 (7th Cir. 1996) (finding that "proceeds" forfeitures do not constitute punishment for purposes of the Fifth Amendment's Double Jeopardy Clause). In any event, the claimants have not pointed to any specific evidence establishing that identifiable portions of the property in question were not properly subject to civil forfeiture.

C.  Sanctions Against Attorney Locher

   Finally, we review the district court's March 23, 2000 decision to impose sanctions against Locher for his conduct in Judge Scott's courtroom regarding the request for Melvin Logan's PSR for an abuse of discretion./12 See Harrison v. Dean Witter Reynolds, Inc., 974 F.2d 873, 886 (7th Cir. 1992).

   Locher argues that the sanction was an order of criminal contempt and that he was entitled to notice and a hearing under Fed. R. Crim. P. 42(b)./13 Judge Mills did not specify the legal basis for the imposition of sanctions in this civil forfeiture proceeding. Such specification would surely make our own review easier, although even if he had done so, we would

still be required to consider whether that characterization was proper. See Securities and Exchange Commission v. Simpson, 885 F.2d 390, 394 (7th Cir. 1989). In any case, the parties did not brief the issue and we need not reach it because we conclude that, whether the sanctions were imposed as criminal or civil sanctions, it is certainly preferable, if not required under certain circumstances, for a district court judge to direct an offending party or attorney to show cause why he should not be sanctioned and to provide him with notice and a hearing. See Larsen v. City of Beloit, 130 F.3d 1278, 1286 (7th Cir. 1997) (imposition of sanctions under various provisions required notice and an opportunity to be heard); Kapco Mfg. Co., Inc. v. C&O Enter., Inc., 886 F.2d 1485, 1494-95 (7th Cir. 1989) (holding that due process requires notice and an opportunity to respond, but not necessarily a hearing)./14 Providing such notice and a hearing prevents misunderstandings between the offending party and the sanctioning judge, provides an orderly manner and calm forum in which each party has had time to prepare adequately, and certainly aids our review on appeal.

While it appears that Locher was given some opportunity to be heard,/15 he was not given notice that he was in jeopardy of being sanctioned or adequate time to prepare a response. Rather, after briefly questioning Locher, Judge Mills took the matter "under abeyance" and without further notice or argument issued a written order of sanction seven months later. In addition to these circumstances, our own review is hampered by the fact that we do not have Locher's motion for parole and probation records in the record before us. Were we to conduct a review of Judge Mill's sanctions order, it would be difficult, if not impossible, for us to assess whether Locher had indeed initially requested Melvin's PSR and been denied that request. Under these particular circumstances, we conclude that the imposition of sanctions constituted an abuse of discretion and we remand the matter for the limited purpose of providing Locher with a hearing on this matter.

Next, Locher requests that Judge Mills

be disqualified from conducting the hearing on remand. First, he relies upon Fed. R. Crim. P. 42(b) which provides that a judge is disqualified from presiding at the hearing where "the contempt charged involves disrespect to or criticism of a judge." Such conduct is not at issue here, however; Locher's alleged conduct does not involve disrespect to or criticism of Judge Mills either in his personal or judicial capacity. Rather, Locher's conduct involves his actions regarding the interpretation of Judge Mills' order denying him access to certain probation and parole records as well as his representations to both Judge Mills and Judge Scott. Accordingly, Fed. R. Crim. P. 42(b) does not prevent Judge Mills from presiding over the hearing on remand. Second, Locher makes a broad claim that Judge Mills should be disqualified because he was hostile towards Locher and is therefore incapable of fairly adjudicating this matter. Locher argues that this hostility is evidenced by an earlier Rule 11 sanction imposed by the court on November 12, 1999./16 However, the imposition of one sanction (the appropriateness of which is not challenged on appeal) does not render a judge incapable of exercising impartiality over that party throughout the duration of the proceeding. Our own review of the record evidences no bias on the part of Judge Mills, and on remand, we have no doubt that the court will make its determination on the basis of the evidence in the record before it./17

III.

For the reasons stated herein, we find that the government established probable cause regarding the forfeiture of defendant properties and that the claimants did not meet their burden of overcoming that presumption. Additionally, we remand the case for the limited purpose of providing Locher with a hearing on the issue of sanctions.

FOOTNOTES

/1 The initial claimants were relatives of Melvin Logan (a noted drug dealer in Springfield, Illinois): his father, Marvin Logan, his sister, Prince Ella Logan, his brothers, Cleveland and

J.B. Logan, his stepdaughters, Shawnika Champion and LaDonna Robinson Champion, and Rhonda Davis, a friend of Cleveland Logan. Only Melvin, Prince Ella and Cleveland have participated in this appeal, and therefore we restrict our review to their claims. Because the remaining claimants share the same surname, we refer to them by their first names.

/2 The district court also noted that even if it granted Locher leave to file a motion to dismiss, it would deny that motion because the complaint sufficiently stated a cause of action.

/3 Locher filed a motion to reconsider the imposition of Rule 11 sanctions, which the district court denied.

/4 We note that although the government did not actually call Melvin Logan to testify, Melvin was listed as one of the government witnesses.

/5 Locher's motion, referred to in the index as "R156," was not included in the record before us.

/6 Melvin asserted a claim to real properties listed in Counts 1, 7, 9, 10, 11, 12, 14, 15, 16 and 17 and to the vehicles listed in counts 20, 23, 28 and 30. Prince Ella asserted a claim to the real properties listed in Counts 2, 3, 4, 9, 10, 11, 15, 16 and 17, and the vehicle listed in Count 22. Cleveland claimed an interest in the real properties listed in Counts 5, 6, 8, 13 and 18 and the vehicles listed in Counts 19, 21 and 25. Counts 5, 13, 25, 26 and 31 were dismissed before trial. After trial, the district court determined that probable cause had not been shown for Counts 1, 19, 20, 21, 22, 23, 29 and 30, and dismissed them. Therefore, we only review the remaining Counts 2-4, 6-12, 14-18 and 28.

/7 On appeal, the claimants also continue to attack the merits of the complaint, arguing that it does not describe with reasonable particularity the properties in question. Even though it dismissed claimants' motion as untimely, as just noted, the district court reached the merits of the claimants' motion to dismiss and

concluded that the complaint sufficiently stated a claim. A complaint for forfeiture under 21 U.S.C. sec. 881 is subject to the particularity requirements set forth in Supplemental Rule E(2), see 21 U.S.C. sec. 881(b), which provides that the government must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." We agree with the district court that this complaint was specific enough to do so.

/8 If there is probable cause to believe that the defendant properties constitute proceeds traceable to the exchange of controlled substances of Title II of the Controlled Substances Act, 21 U.S.C. sec. 801 et seq., they are subject to forfeiture pursuant to 21 U.S.C. sec. 881(a)(6). Likewise, if there is probable cause that properties were used or intended to be used to commit or to facilitate a crime in violation of Title II, they are subject to forfeiture pursuant to 21 U.S.C. sec.sec. 881(a)(4) (vehicles) and (a)(7) (real property).

/9 In its analysis, the district court concluded that 21 U.S.C. sec. 881(d) only allowed the government to present evidence obtained prior to the date that it filed its forfeiture complaint (rather than allowing after-acquired evidence to show probable cause). Our circuit has not yet ruled on this issue, see United States v. $87,118.00 in U.S. Currency, 95 F.3d 511, 515-16 (7th Cir. 1996). However, because the district court's methodology was not appealed, we need not reach the question.

/10 As noted above, discovery was originally scheduled to end on September 14, 1998, but when Locher entered the case in November 1998, the court extended it to March 19, 1999. Melvin's first motion to obtain this information, however, was not filed until May 28, 1999.

/11 The Eighth Amendment states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII.

/12 Locher does not appeal the Rule 11 sanctions imposed on him on November 12, 1999.

/13 Fed. R. Crim. P. 42(b) requires the offending party to be given notice, a reasonable time for preparation of a defense, and a hearing. We note that Fed. R. Crim. P. 42(a) provides for summary disposition where the judge "certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court." The conduct for which Locher was sanctioned did not occur in Judge Mills' presence and therefore this summary procedure was not applicable.

/14 See also Fed. R. Civ. P. 37 (offending party should be given an "opportunity to be heard" before imposition of discovery sanctions); Fed. R. Civ. P. 11(c) (court may impose sanctions on its own initiative after directing lawyer to show cause why it has not committed violation); Fed. R. Crim. P. 42(b) (requiring notice, reasonable time for preparation of defense and a hearing).

/15 As related above, after stating that Locher "appears to have at the least dissembled with Judge Scott and tried to go in the back door and get what he could not get in through the front in this case," Judge Mills gave Locher a chance to respond, saying, "Now, dissuade me of that conclusion, Mr. Locher." Locher then admitted what he had done, as well as admitting that he had not informed Judge Scott that he had already been denied access to the PSR.

/16 The court imposed this sanction, after issuing a rule to show cause and reviewing Locher's response, based on Locher's repeated filing of a motion to dismiss that the court found to be "frivolous," "blatantly untimely" and filed in an effort to "harass the Government's attorney or to delay the proceedings."

/17 Locher's argument that Judge Mills' sanction against him indicates that Melvin did not receive a fair and neutral tribunal in violation of his due process rights is meritless. Without further argument, Locher merely cites to Walberg v. Israel, 766 F.2d 1071, 1075

(7th Cir. 1985) ("the judge who is so hostile to a lawyer as to doom the client to defeat, deprives the client of the right to an impartial tribunal."). This argument was not raised below, nor was it developed on appeal and therefore has been waived. This court is not in the business of formulating arguments for parties. See United States v. McClellan, 165 F.3d 535, 550 (7th Cir. 1999).